# In the United States Court of Federal Claims

No. 23-2032
(Filed: July 15, 2026)

```
*************************************
TRACY A. BROWN,                    *
                                   *
                 Plaintiff,        *
                                   *
         v.                        *
                                   *
THE UNITED STATES,                 *
                                   *
                 Defendant.        *
*************************************
```

*Wojciech Z. Kornacki*, Pentagon Law Office, Washington, DC, counsel for Plaintiff.

*Kyle Shane Beckrich*, United States Department of Justice, Civil Division, Washington, DC, counsel for Defendant. With whom was *Nicole A. Oberjuerge*, Major, Judge Advocate, United States Army Legal Services Agency, of counsel.

## OPINION AND ORDER

**DIETZ, Judge.**

Tracy A. Brown, a former major in the United States Department of the Army ("Army"), brings this wrongful discharge action seeking to set aside his administrative elimination from the Army, correct his military records, and recover money damages under the Military Pay Act, 37 U.S.C. § 204. Before the Court are the parties' cross-motions for judgment on the administrative record pursuant to Rule 52.1 of the Rules of the United States Court of Federal Claims ("RCFC"). For the reasons set forth below, the Court **DENIES** Mr. Brown's motion for judgment on the administrative record and **GRANTS** the government's cross-motion.

## I.   BACKGROUND

Mr. Brown enlisted in the Army on January 16, 1998, Am. Compl. [ECF 17] ¶ 21, and served as a commissioned officer from February 23, 2006, through his date of discharge, AR 1394-95.[1] In July 2016, Mr. Brown was promoted to the rank of major, and, from January 2017 through April 2017, he attended a four-month intermediate level education class at the Command and General Staff School at Fort Lee, Virginia. AR 964, 1395. On March 3, 2017, an officer attending the same class reported that Mr. Brown "sexually assaulted her." AR 271. The United States Army Criminal Investigation Division ("CID") investigated the report, AR 271-74, and found "probable cause [] to believe MAJ Brown committed the offense of Abusive Sexual

---

[1] The Court cites to the Administrative Record filed by the government at [ECF 28] as "AR ___."

Contact," AR 122. On April 19, 2017, the Army issued Mr. Brown a General Officer Memorandum of Reprimand ("GOMOR") for "committing sexual harassment in violation of [Army Regulation] 600-20 [¶] 7-6b." AR 196. Thereafter, the Army placed the GOMOR "permanently in [his] Army Military Human Resources Record." AR 198.

On May 16, 2017, the Army initiated elimination proceedings against Mr. Brown for violating Army Regulation 600-20, ¶ 7-6b, and for "conduct unbecoming an officer in accordance with [Army Regulation] 600-8-24 [¶] 4-2b(8)." AR 201. At the same time, the Army initiated a "Suspension for Favorable Personnel Actions Flag," AR 201, and informed Mr. Brown of his options, which included submitting a rebuttal, requesting resignation in lieu of elimination, or applying for retirement in lieu of elimination if otherwise eligible, AR 201-02. Further, the Army told Mr. Brown that if he did not select one of these options, he had to "submit a declination statement and request appearance before a Field Board of Inquiry [('BOI')]." AR 202. On May 18, 2017, Mr. Brown "acknowledge[d] receipt of the officer elimination initiation memorandum" and elected to "[s]ubmit a request for a [BOI]." AR 760.

The BOI convened on June 30, 2017, "to hear evidence and require [Mr. Brown] to show cause as to why []he should be retained on [a]ctive [d]uty under the provisions of Army Regulation 600-8-24, paragraph 4-2b because of misconduct, moral or professional dereliction." AR 206. Mr. Brown was represented by civilian counsel. *Id.* The BOI heard testimony from several witnesses, including the complaining witness, and reviewed submissions from the government and Mr. Brown. AR 206-59. After the complaining witness testified, she "departed the hearing room, and then reentered and was seated in the gallery." AR 258. The BOI then listened to closing arguments, closed for deliberations, and reopened 30 minutes later. AR 258-59. Thereafter, the BOI found that "[t]he allegation of sexual harassment . . . against a fellow student" and "[t]he allegation of conduct unbecoming an officer by committing sexual harassment . . . against a fellow student . . . [are] supported by a preponderance of evidence." AR 260. The BOI recommended that Mr. Brown be "separated from the United States Army and [that his] service be characterized as . . . General (under honorable conditions)." AR 261.

On July 6, 2017, Mr. Brown's civilian counsel sent a memorandum to the Army alleging a substantial defect in his BOI proceedings. AR 307-10. Specifically, he stated that even though "[Army Regulations] 600-8-24 and [] 15-6 bar witnesses at a board from attending the proceedings as spectators," AR 308, someone on the BOI "invited [the complaining witness] to sit in the gallery of the boardroom . . . as a spectator during the closing arguments and when the board reconvened . . . to announce its findings," AR 307. According to Mr. Brown's counsel, he did not see the complaining witness in the gallery until after most of the closing arguments were completed. AR 310. On July 25, 2017, a United States Army Combined Arms Support Command ("CASCOM") staff judge advocate conducted a legal review of the alleged defect. AR 775. The staff judge advocate found that "[e]ven if it were determined that . . . [the complaining witness] should not have been present . . . during closing arguments and the reading of the panel's decision, such a defect is not a 'substantial defect'" because "[Mr. Brown] and his counsel failed to object to [the complaining witness'] presence . . . [and they] present[] no evidence that [her] presence had an adverse effect upon the board members or that she influenced their decision." AR 777. The staff judge advocate also found that, although Mr. Brown's counsel "argue[d] that the [complaining witness'] presence terminated the confidential

2

nature of the [proceedings]," such claim "is without merit." *Id.* According to the staff judge advocate, the complaining witness "provided the most damaging facts during the proceedings" and "[t]here was no confidential information for her to gain by being present." *Id.* In addition to the staff judge advocate's findings, an Army administrative law attorney, who participated in the proceedings, and the BOI court reporter provided memoranda describing their observations regarding the complaining witness' presence during the proceedings. AR 312-14. On August 4, 2017, CASCOM notified Mr. Brown that it had "determine[d] there was no substantial defect committed during [his BOI] . . . [and] direct[ed] the continued processing of [his] [o]fficer [e]limination." AR 783.

On August 5, 2017, Mr. Brown submitted a request for "voluntary retirement in lieu of elimination" to the Fort Lee Retirement Services Office. AR 133-135. Separately, on August 9, 2017, CASCOM provided Mr. Brown with "a copy of the [BOI] report and summary of proceedings in [his] case." AR 263. CASCOM advised Mr. Brown that he could "[s]ubmit a request for resignation in lieu of elimination," "[r]equest a discharge in lieu of elimination," or "[a]pply for retirement in lieu of elimination if otherwise eligible[.]" *Id.* CASCOM further advised him that he could "submit an appellate brief and statement within 7 calendar days," that the "entire case w[ould] be considered by a Board of Review," and that he "w[ould] be entitled to a copy of the Board of Review report." AR 264. On August 15, 2017, Mr. Brown "elect[ed] to apply for retirement in lieu of elimination." *Id.* Thereafter, on September 5, 2017, CASCOM forwarded both his August 5, 2017, voluntary retirement request and his August 15, 2017, retirement in lieu of elimination request to the United States Army Human Resources Command ("HRC"), along with various attachments. AR 410.[2] In the forwarding memorandum, CASCOM noted that Mr. Brown had "request[ed] a copy of the Board of Review report." *Id.*

On September 15, 2017, while separately processing Mr. Brown's request to retire in lieu of elimination, the Fort Lee Retirement Services Office forwarded Mr. Brown's "voluntary retirement in lieu of elimination" request to HRC. AR 138, 140. HRC returned this request "without action" on September 21, 2017, and noted that Mr. Brown "ha[d] 3 adverse action flags," and "an active duty service obligation [("ADSO")] through 1 December 2018 for [post-9/11] GI Bill benefits transfer." AR 139. HRC further noted that "if flag[s] become[] cleared, [the o]fficer may submit for voluntary retirement consideration." *Id.*

On November 16, 2017, an Ad Hoc Review Board reviewed Mr. Brown's case. AR 407. The Ad Hoc Review Board "unanimously recommended MAJ Brown be eliminated prior to reaching retirement eligibility and that he receive a General (Under Honorable Conditions) characterization of service." AR 408-09. Thereafter, the Deputy Assistant Secretary of the Army (Review Boards) ("DASA") submitted a memorandum to the Senior Official Performing the

---

[2] Those attachments were: (1) the BOI proceedings and exhibits, AR 411-757; (2) the August 9, 2017, memorandum providing Mr. Brown a copy of the BOI report and his August 15, 2017, election to apply for retirement in lieu of elimination, AR 758-59; (3) Mr. Brown's May 18, 2017, acknowledgement of receipt of the officer elimination initiation memorandum recommending his involuntary separation, AR 760-65; (4) Mr. Brown's August 5, 2017, memorandum requesting voluntary retirement in lieu of elimination, AR 766-70; (5) Mr. Brown's July 6, 2017, notice to the Army alleging a substantial defect in his BOI proceedings, AR 771-74; (6) the July 25, 2017, legal review by the staff judge advocate regarding the alleged BOI defect, AR 775-77; (7) the memoranda from the Army administrative law attorney and court reporter describing the BOI proceedings, AR 778-82; and (8) the August 4, 2017, memorandum determining that no substantial defect occurred during Mr. Brown's BOI, AR 783.

Duties of the Assistant Secretary of the Army (Manpower and Reserve Affairs) ("ASA") for the purpose of obtaining a decision on Mr. Brown's elimination action. AR 408. The DASA explained that the "delegation of authority [from the ASA] to [her did] not allow [her] to act on cases involving officers who have at least eighteen (18) years of active federal service at the time of elimination and are not eligible for retirement" and that the ASA "retained the authority to act on these cases for the Secretary of the Army." *Id.* The DASA further explained that if the ASA "approve[d] MAJ Brown's immediate elimination, he w[ould] not reach regular retirement eligibility as he ha[d] approximately 19 years, 11 months of Active Federal Service." *Id.* On December 21, 2017, the DASA sent a memorandum to HRC stating that the ASA "determined that Major Tracy A. Brown w[ould] be involuntarily eliminated from the United States Army with a General (Under Honorable Conditions) characterization of service." AR 407. The DASA further stated that the "elimination is based on misconduct and moral or professional dereliction (Army Regulation 600-8-24, paragraph 4-2b)." *Id.* On December 22, 2017, the Army notified Mr. Brown that he would be eliminated from active duty on January 5, 2018. AR 143.

On January 4, 2018, Mr. Brown filed a petition with the Army Board for Correction of Military Records ("ABCMR") requesting removal of the BOI results from his official military personnel file, reinstatement to active duty or constructive credit for twelve days such that he would be retirement eligible, and expedited consideration of his claims. AR 170, 184. He alleged:

> The BOI should be removed from [his official military personnel file] because the government failed to prove the allegations against him were true by a preponderance of the evidence. The BOI failed to prove the alleged conduct constituted an act of sexual harassment as a matter of law and the proceedings contained fatal flaws, which prejudiced [his] right to a fair board. In addition, the CID never opined [he] committed an act of sexual harassment.

AR 171-72. On June 11, 2019, the ABCMR found that "there was no error or injustice presented in the records or by [Mr. Brown]," and recommended the denial of his requested relief. AR 170, 178-79. The ABCMR notified Mr. Brown of its determination on September 30, 2019. AR 168.

On June 9, 2021, Mr. Brown submitted a second petition to the ABCMR. AR 100-01. He requested reconsideration of his first petition and additionally requested the "[r]emoval of the [GOMOR] from his [official military personnel file]," the "[r]emoval of his name from the titling block of a [CID] Law Enforcement Report," and the "[c]orrection of administrative data." AR 5. Mr. Brown argued that he "was improperly reprimanded and required to show cause for allegedly committing an offense that was not the subject of the CID investigation," that the Army "fail[ed] to properly refer [his] favorably endorsed retirement request to an [Army Grade Determination Review Board ('AGDRB')]," and that his "punishment [was] disproportionate and an injustice based on his honorable service and honorable life post-discharge." AR 9, 10, 12 (capitalization omitted). On February 14, 2024, the ABCMR denied Mr. Brown's petition, finding that "the evidence presented d[id] not demonstrate the existence of a probable error or injustice." AR 34. The ABCMR notified Mr. Brown of its decision on February 16, 2024. AR 3.

4

On November 27, 2023, while his second petition was pending before the ABCMR, Mr. Brown filed a complaint before this Court, Compl. [ECF 1], which he amended on June 17, 2024, [ECF 17]. Therein, he claims that (1) the Army "fail[ed] to properly process [his] retirement request in lieu of elimination," [ECF 17] at 14;[3] (2) the Army "fail[ed] to process [his] retirement request while flagged," *id.* at 16; (3) the Army "improper[ly] induce[d him] to apply for retirement later," *id.* at 18; (4) the Army "violat[ed his] right to a fair and impartial hearing," *id.* at 20; (5) the ABCMR "acted capriciously and arbitrarily in [its June 11, 2019,] decision," *id.* at 21; (6) the ABCMR acted capriciously and arbitrarily in its February 16, 2024, decision," *id.* at 22; (7) the Army improperly titled him for committing abusive sexual contact rather than sexual harassment, *id.* at 23; and that (8) the Army "violated [his] due process rights . . . during the elimination board proceedings," *id.*[4] Mr. Brown filed his motion for judgment on the administrative record on June 17, 2024, Pl.'s Mot. J. Admin. R. [ECF 18], the government filed its response and cross-motion on July 31, 2024, Def.'s Mot. J. Admin. R. [ECF 21], and the motions are now fully briefed, Pl.'s Reply & Resp. [ECF 22]; Def.'s Reply [ECF 29]. The Court heard oral argument on July 23, 2025, and ordered supplemental briefing. [ECF 32]. The parties completed supplemental briefing on September 19, 2025. Def.'s Brief [ECF 34]; Pl.'s Resp. Brief [ECF 35]; Def.'s Reply Brief [ECF 36].

## II.   STANDARD OF REVIEW

Where a party moves for judgment on the administrative record pursuant to RCFC 52.1, the court must "make factual findings from the record evidence as if it were conducting a trial on the record." *Bannum, Inc. v. United States*, 404 F.3d 1346, 1354 (Fed. Cir. 2005). The inquiry before the court is whether a decision-making body, "given all the disputed and undisputed facts appearing in the record, acted in a manner that complied with the legal standards governing the decision under review." *Williams v. United States*, 116 Fed. Cl. 149, 157 (2014). Where a plaintiff challenges the decision of a military correction board, the court reviews the decision under Administrative Procedure Act ("APA") standards. *Walls v. United States*, 582 F.3d 1358, 1367 (Fed. Cir. 2009) ("[I]t has become well established that judicial review of decisions of military correction boards is conducted under the APA."). Under this standard, the court reviews whether a military correction board's decision was "arbitrary, capricious, unsupported by substantial evidence, or contrary to applicable statutes and regulations." *Melendez Camilo v. United States*, 642 F.3d 1040, 1044 (Fed. Cir. 2011) (quoting *Heisig v. United States*, 719 F.2d 1153, 1156 (Fed. Cir. 1983)).

A decision "is arbitrary and capricious when the agency decision-maker entirely fail[s] to consider an important aspect of the problem, offer[s] an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Kelly v. United States*, 69 F.4th 887, 894 (Fed. Cir. 2023) (alterations in original) (internal quotation marks omitted) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). A correction board's decision "may [also] be reviewed for failure to correct plain legal error committed by the military . . . includ[ing] the military's 'violation of statute, or regulation, or published mandatory

---

[3] All references to page numbers in the parties' filings refer to the page numbers generated by the CM/ECF system.

[4] The Court omitted the capitalization and emphasis from each of the quoted phrases in this sentence.

procedure, or unauthorized act.'" *Dodson v. Dep't of Army*, 988 F.2d 1199, 1204 (Fed. Cir. 1993) (citations omitted). However, "strict compliance with procedural requirements is not required where the error is deemed harmless." *Wagner v. United States*, 365 F.3d 1358, 1361 (Fed. Cir. 2004); *accord Exnicios v. United States*, 140 Fed. Cl. 339, 374 (2018) ("[T]he military's failure to comply with its procedures for effecting a discharge does not render the discharge itself unlawful where the procedural error is deemed 'harmless' because the regulatory violation did not substantially affect the outcome of the matter." (quoting *Rogers v. United States*, 124 Fed. Cl. 757, 767 (2016))).

Regarding officer elimination actions, "an administrative discharge . . . is void if it exceeds applicable statutory authority, [] ignores pertinent procedural rights or regulations, or violates minimum concepts of basic fairness." *Waller v. United States*, 461 F.2d 1273, 1276 (Ct. Cl. 1972); *see also Williams*, 116 Fed. Cl. at 157-58 ("[T]he military must abide by its own procedural regulations[.]" (quoting *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002))). As a result, in evaluating a servicemember's challenge to a military board decision, "[a] court may appropriately decide whether the military followed [its] procedures because by their nature the procedures limit the military's discretion." *Murphy v. United States*, 993 F.2d 871, 873 (Fed. Cir. 1993). "[M]ilitary administrators are presumed to act lawfully and in good faith like other public officers, and the military is entitled to substantial deference in the governance of its affairs." *Bader v. United States*, 160 Fed. Cl. 529, 544 (2022) (alteration in original) (quoting *Dodson*, 988 F.2d at 1204), *aff'd*, 97 F.4th 904 (Fed. Cir. 2024); *see also Chambers v. United States*, 417 F.3d 1218, 1227 (Fed. Cir. 2005) (The court "will not disturb the decision of the corrections board unless it is arbitrary, capricious, contrary to law, or unsupported by substantial evidence[.]" (citing *Haselrig v. United States*, 333 F.3d 1354, 1355 (Fed. Cir. 2003))). The plaintiff bears the burden to show "by cogent and clearly convincing evidence that the Board's decision was arbitrary, capricious or unlawful . . . [or] that the decision is not supported by substantial evidence." *Dorl v. United States*, 200 Ct. Cl. 626, 633 (1973). Where a military board "examine[s] all the relevant facts in the record and explain[s] its conclusions," *Stine v. United States*, 92 Fed. Cl. 776, 791 (2010), *aff'd*, 417 F. App'x 979 (Fed. Cir. 2011), the court must uphold the board's decision, even if "reasonable minds could reach differing conclusions on the same evidence," *id.* at 791 (quoting *Heisig*, 719 F.2d at 1156; *Kirwin v. United States*, 23 Cl. Ct. 497, 505 (1991)).

## III.    DISCUSSION

Mr. Brown alleges that the Army "wrongfully eliminat[ed] [him] from active duty under Army Regulation 600-8-24 and Army Regulation 15-6." [ECF 18] at 6. Specifically, he contends that the Army violated his due process rights through its BOI proceedings by "fail[ing] to detail the evidence [] used to support [its] findings," *id.* at 14, and by "allow[ing] the complaining witness to spectate." *Id.* He also contends that the Army "failed to comply with its own instructions" when it processed his elimination action using an Ad Hoc Review Board rather than a Board of Review, *id.* at 6-7, and "erroneously" advised him that his elimination action "would be forwarded to the [AGDRB]," *id.* at 16. Lastly, Mr. Brown contends that the Army "arbitrarily and capriciously returned [his] retirement request without action," "interfered with [his] retirement request by improperly maintaining flags in [his] records," and improperly advised him "that he could apply for [retirement] later." *Id.* at 16. For the reasons explained below, the Court

6

finds that Mr. Brown has not shown that the Army's elimination action against him was arbitrary, capricious, an abuse of discretion, or otherwise unlawful.

### A.    The Board of Inquiry

Mr. Brown raises two challenges to his BOI proceedings. [ECF 18] at 14. He argues that the BOI members arbitrarily "failed to specify what facts they considered when making their [elimination] recommendation and [that] they were [improperly] exposed to the complaining witness for approximately 40 minutes." *Id.* The government asserts that "[n]o violation of Mr. Brown's due process rights occurred when the complaining witness was permitted to observe the attorneys' closing arguments during the [BOI] proceedings," [ECF 21] at 22, and that "any alleged error was not substantial because Mr. Brown's civilian attorney did not raise an objection," *id.* The government further asserts that "there [is no] merit to Mr. Brown's contention that the [BOI] members failed to detail the evidence that supported their findings and recommendation or that the Army failed to consider his past service record and awards." *Id.* at 23.

The Court agrees with the government in both respects. First, the record does not support Mr. Brown's assertion that the BOI failed to explain its findings as required by Army Regulation 600-8-24. *See* [ECF 18] at 15; [ECF 22] at 22. Paragraph 4-15(b)(2) of Army Regulation 600-8-24 states:

> Based on the evidence (presented at the hearings), the board will make a separate finding (including a brief statement) on each factual allegation and reason for involuntary separation. The [b]oard will render findings of fact, supported by a preponderance of the evidence, that describe specific relevant conduct by the Respondent in sufficient detail to support the [b]oard's recommendation. The findings will address each separate reason for separation and each separate factual allegation.

Army Reg. 600-8-24 ¶ 4-15(b)(2) (2006). Here, the Army informed Mr. Brown of the factual allegations and reasons for the elimination proceedings. *See* AR 201 (memorandum notifying Mr. Brown of the initiation of elimination proceedings against him "for committing sexual harassment in violation of [Army Regulation] 600-20, paragraph 7-6b" and for "[c]onduct unbecoming an officer in accordance with [Army Regulation] 600-8-24 paragraph 4-2b(8)"). Thereafter, the BOI conducted an evidentiary proceeding. AR 205-259. In addition to receiving documentary evidence, such as Mr. Brown's GOMOR packet and his Army Military Human Resources Record, AR 205, the BOI heard testimony from various witnesses, including the complaining witness and Mr. Brown, AR 208-258. Thereafter, the BOI deliberated and then issued findings and recommendations. AR 259. In its documented findings and recommendations, the BOI determined that, "having carefully considered the evidence before it . . . the allegation of sexual harassment in violation of [Army Regulation] 600-20 paragraph 7-6(b), against a fellow student while attending Command and General Staff School" and "the allegation of conduct unbecoming an officer by committing sexual harassment in violation of [Army Regulation] 600-20, paragraph 7-6b, against a fellow student while attending Command

and General Staff School . . . ([Army Regulation] 600-8-24, paragraph 4-2b(8)) [were] supported by a preponderance of evidence." AR 260. Consequently, the BOI recommended that Mr. Brown be separated. AR 261. Though lacking the level of detail sought by Mr. Brown, the BOI's findings and recommendations satisfy the requirements of Army Regulation 600-8-24, paragraph 4-15(b)(2). Most importantly, the record shows that, based on the evidence presented at the proceeding, the BOI made a separate finding on each factual allegation against Mr. Brown, determined that such factual findings describing Mr. Brown's conduct—namely sexual harassment and conduct unbecoming an officer—were supported by a preponderance of evidence, and relied on such findings in recommending that Mr. Brown be separated from the Army with a general (under honorable conditions) characterization of service. *See* AR 260-61; Army Reg. 600-8-24 ¶ 4-15(b)(2) (2006).

Next, while the record shows that the complaining witness was present during a portion of the BOI proceedings—in violation of Army regulations—such error was reasonably determined to be harmless. Paragraph 4-14 of Army Regulation 600-8-24 instructs that "[a]ny person called as a witness will not be present as a spectator." Army Reg. 600-8-24 ¶ 4-14 (2006); *see* Army Reg. 15-6 ¶ 3-8(b) (2016) ("Witnesses, other than respondents, normally will not be present at the investigation or board proceedings, except when they are testifying."). However, an error is not substantial "if there is a failure to object or otherwise bring the error to the attention of the [investigating officer], legal advisor, or board president, prior to the board adjourning." Army Reg. 15-6 ¶ 3-20(d) (2016). Additionally, "errors in board proceedings . . . may be treated as harmless if the respondent or respondent's counsel fails to object." *Id.* Here, the parties do not dispute that the complaining witness was present as a spectator for closing arguments and for the reading of the BOI's findings and recommendations. [ECF 18] at 9; [ECF 21] at 22; AR 258. As a result, the Army violated Army Regulations 600-8-24 ¶ 4-14 and 15-6 ¶ 3-8(b) by allowing the complaining witness to be present at the board proceedings after she testified.

However, Mr. Brown and his counsel failed to object to the complaining witness' presence and did not bring the error to the attention of the board president before the adjournment of proceedings. *See* AR 258-59. Mr. Brown argues that he and his attorney only noticed the complaining witness' presence once "the damage was already done." [ECF 22] at 22. Yet, the administrative record demonstrates that the BOI acknowledged the complaining witness' presence when she reentered the courtroom. *See* AR 312 (memorandum by Army administrative law attorney observing that "[u]pon seeing [the complaining witness] enter, [one of the board members] stated that she could be seated in the gallery"); AR 314 (memorandum by court reporter observing that one of the board members "told [the complaining witness], '[y]ou can sit in the gallery,'" and "observed . . . MAJ Brown turn toward the sound of the door opening" as the complaining witness either left or reentered the hearing room). Moreover, Mr. Brown's letter to the Army alleging a substantial defect in his BOI proceedings acknowledged that his counsel "heard the [r]ecorder announce that [the complaining witness] would be in the gallery." AR 773. Therefore, Mr. Brown and his counsel had knowledge of the complaining witness' presence in the hearing room and failed to object prior to the board adjourning. Accordingly, even if the BOI violated Army Regulations 600-8-24 ¶ 4-14 and 15-6 ¶ 3-8(b) by permitting the complaining witness to spectate during a portion of the BOI proceedings, such violations constitute harmless error under Army Regulation 15-6 ¶ 3-20(d).

### B.    The Ad Hoc Review Board

Mr. Brown asserts that, in the Army's written communications regarding his elimination action, AR 201-03, 1020-21, the Army "advised [him] that his elimination action would be submitted to the Board of Review . . .  and that [he] would be entitled to a copy of the Board of Review report" but "failed to comply with its own instructions." [ECF 18] at 6. He alleges that the government instead "processed [his] elimination packet without his knowledge through the Ad Hoc Review Board and never gave him a copy of the proceedings." *Id.* at 7. Mr. Brown further asserts that "[t]he Board of Review – not consisting of the same members [] as the [BOI] – could have recommended to upgrade [his] characterization of discharge and could have recommended to retain him." *Id.* at 15. Therefore, Mr. Brown contends that the Army "failed to properly process" his elimination action, *id.* at 6, that he "reasonably relied on [the Army's] advice to his prejudice," *id.* at 9, and that "the ABCMR failed to adequately address" these violations, *id.* at 17. The government counters that the Army properly processed Mr. Brown's elimination action, [ECF 21] at 26, and that "[o]ther than stating that the Army failed to furnish him with a copy [of the Ad Hoc Review Board proceedings], Mr. Brown identifies nothing harmful about the Army's purported error," [ECF 29] at 8.

The Court finds that the Army lawfully processed Mr. Brown's elimination action using an Ad Hoc Review Board. At the time of Mr. Brown's elimination action, Army Regulation 600-8-24 ¶ 4-17a stated that elimination actions would be reviewed by a Board of Review. *See* Army Reg. 600-8-24 ¶ 4-17a (2006). However, in a December 9, 2016, memorandum, the Secretary of the Army stated:

> For [BOIs] initiated after [December 9, 2016], [the ASA] may take final action on the case without referral to, or action by, a Board of Review, notwithstanding the provisions of paragraph 4-17 of Army Regulation 600-8-24 . . ., which is hereby superseded by this delegation. The next revision of Army Regulation 600-8-24 . . . will be modified to reflect this change in authority and procedure . . . . [The ASA] may, pursuant to [Headquarters, Department of the Army ("HQDA")] General Orders No. 16 . . . , establish and convene an ad hoc review board to review and make nonbinding recommendations to [the ASA] concerning the disposition of any case, except those involving a Board of Review.

[ECF 21-1] at 76 (December 9, 2016, "Specific Delegation of Authority to the [ASA] to Administer Component Boards of the Army Review Boards Agency" memorandum); *see also id.* at 83 (December 20, 2016, "Redelegation of Authority to Administer Component Boards of the Army Review Boards Agency" memorandum delegating the same authority from the ASA to the DASA). In other words, for BOIs initiated after December 9, 2016, the memorandum permitted the ASA to take final action on an elimination case without satisfying the Board of Review requirement under Army Regulation 600-8-24 ¶ 4-17a. The memorandum also granted the ASA discretion to use an Ad Hoc Review Board to make a recommendation regarding elimination. Accordingly, because Mr. Brown's BOI was initiated after December 9, 2016, *see* AR 206, the

9

ASA acted within his discretion when he took final action on Mr. Brown's case without referral to a Board of Review, AR 407-08, and when he used an Ad Hoc Review Board to review Mr. Brown's case and make a recommendation regarding his elimination, AR 408-09.[5]

Despite the Army's use of an Ad Hoc Review Board to process Mr. Brown's elimination action, a CASCOM staff judge advocate notified Mr. Brown that his "entire case w[ould] be considered by a Board of Review and [he] w[ould] be entitled to a copy of the Board of Review report." AR 264, 1021. While such notice was compliant with the Army regulation in effect at that time, it did not reflect the changes in procedure made by the December 9, 2016, memorandum. *Compare* Army Reg. 600-8-24 ¶ 4-17a (2006) (requiring elimination cases be referred to a Board of Review) *with* [ECF 21-1] at 76 (December 9, 2016, memorandum granting ASA discretion to not refer elimination cases to a Board of Review and discretion to convene an Ad Hoc Review Board). Nevertheless, this notice does not entitle Mr. Brown to a Board of Review because it lacks the requisite authority to obligate the Army to conduct a Board of Review. The Secretary of the Army is responsible for "prescrib[ing] regulations to carry out his functions, powers, and duties." 10 U.S.C. § 7013(g)(3). He prescribed Army Regulation 600-8-24 ¶ 4-17a (2006)—which required a Board of Review—and superseded the Board of Review requirement with the December 9, 2016, memorandum—which granted the ASA discretion to not conduct a Board of Review. *See* [ECF 21-1] at 76. Therefore, while the Secretary of the Army may delegate his authority to the Under Secretary of the Army or to ASAs, *see* 10 U.S.C. § 7013(f), the record does not support any such delegation to CASCOM.[6] Thus, the notice from the CASCOM staff judge advocate informing Mr. Brown that "his case will be considered by a Board of Review," AR 1021, does not obligate the Secretary of the Army or his designee to conduct a Board of Review.

---

[5] The Court ordered the parties to file supplemental briefs on the issue of whether the DASA had "the authority to eliminate Mr. Brown when he was over 18 years of service on the date of his proposed discharge," [ECF 32] at 2, even though the memorandum delegating authority from the ASA to the DASA appears to reserve such authority for the ASA, *see* [ECF 21-1] at 83 (December 20, 2016, Memorandum, ¶ 6(b)(1)). In response, both parties agreed that the DASA did not have the authority to eliminate Mr. Brown and that such authority rested with the ASA. [ECF 34] at 1 (government's supplemental brief); [ECF 35] at 1 (Mr. Brown's supplemental brief). Here, the record shows that first, the DASA submitted a memorandum to the ASA requesting a decision on Mr. Brown's elimination action. AR 408-09. Next, according to the DASA, the ASA "determined that Major Tracy A. Brown will be involuntarily eliminated from the United States Army with a General (Under Honorable Conditions) characterization of service." AR 407. Thereafter, the DASA directed the elimination of Mr. Brown. *Id.* Even though the record lacks documentation from the ASA, it sufficiently supports the conclusion that Mr. Brown's elimination was properly authorized. *See Jennings v. Mansfield*, 509 F.3d 1362, 1367 (Fed. Cir. 2007) ("A presumption of regularity applies to official acts of public officers, and allows [the court], [i]n the absence of clear evidence to the contrary, to presume[] that public officers have properly discharged their official duties." (second and third alterations in original) (internal quotation marks and citations omitted)).

[6] For a CASCOM staff judge advocate to be permitted to exercise the Secretary of the Army's discretion to conduct a Board of Review, such authority would have to be delegated down several echelons—from (1) HQDA to (2) the United States Army Training and Doctrine Command ("TRADOC") to (3) the United States Army Combined Arms Center to (4) CASCOM. *See* TRADOC Reg. 10-5 ¶ 2-2a, Figure 2-1 (2017) [https://perma.cc/9ZDV-ZW9C]; *Army Command Structure*, Mad Scientist Laboratory Blog (United States Army Initiative) [https://perma.cc/GB9K-J6H3]. The record does not support that such delegations occurred but instead shows that no delegations beyond the DASA were authorized. *See* [ECF 21-1] at 83 (December 20, 2016, memorandum granting the DASA discretion to not conduct a Board of Review and the discretion to convene an Ad Hoc Review Board but recognizing that such "authorities . . . may not be further delegated" by the DASA).

Mr. Brown nevertheless alleges that the Army's failure to provide him with notice "that his matter could be considered by [an] Ad Hoc Review Board [] before it proceeded with elimination . . . violated [his] due process rights under [Army Regulation] 600-8-24." [ECF 22] at 24. Even if the Court were to treat the Army's failure to provide Mr. Brown with such notice as an error, such error would be harmless. "[A]ssuming that [the Army's] actions violated . . . regulations, in order to prevail by demonstrating a procedural error in a military discharge case, [a servicemember] must show that 'the defect substantially affected the decision to separate him,' or must at least 'set forth enough material to impel the court to direct a further inquiry into the nexus between the error or injustice and the adverse action.'" *Rogers v. United States*, 124 Fed. Cl. 757, 768 (2016) (quoting *Christian v. United States*, 337 F.3d 1338, 1343 (Fed. Cir. 2003)). Mr. Brown fails to make this showing. The Army's failure to provide Mr. Brown with notice that his case would be considered by an Ad Hoc Review Board rather than a Board of Review did not affect the Army's decision to eliminate him. Such a notice presumably would have informed Mr. Brown that the August 9, 2017, CASCOM notice did not comply with the December 9, 2016, memorandum and erroneously informed him that he would receive a Board of Review. However, the course of Mr. Brown's elimination proceedings and the ultimate elimination decision would remain unchanged because he still would not have received a Board of Review. *See Holton v. Dep't of the Navy*, 884 F.3d 1142, 1142 (Fed. Cir. 2018) (finding that "[t]he failure to provide written notice [of drug testing] was ultimately not harmful error" where "[t]he purpose of [such] notice [was] not to provide an opportunity to challenge the propriety of the test").

Moreover, even if the Army had conducted a Board of Review instead of an Ad Hoc Review Board, such proceeding would not have provided Mr. Brown with any additional rights. First, despite Mr. Brown's assertion that a Board of Review would have a different composition than his BOI, [ECF 18] at 15, the applicable regulation provides that the Board of Review consists of the same composition as the BOI, Army Reg. 600-8-24 ¶ 4-17a (2006) ("The Board of Review . . . has the same board composition as the [BOI]."). Second, in a Board of Review proceeding, Mr. Brown would not have had an opportunity to appear or to be represented by counsel. *Id.* ("Appearance by the respondent (or the counsel) is not authorized."). Accordingly, a Board of Review would not have provided Mr. Brown with an additional opportunity to contest his elimination proceedings. Lastly, even though the Board of Review is required to "furnish the [servicemember] a copy of the board proceedings," *id.* ¶ 4-17f, the Board would not have furnished Mr. Brown with a copy until *after* the proceedings were completed. Therefore, conducting a Board of Review would not have "substantially affected the decision to separate him," *Rogers*, 124 Fed. Cl. at 768 (quoting *Christian*, 337 F.3d at 1343).

### C.    The Army Grade Determination Review Board

Mr. Brown contends that the Army "improperly process[ed his] requests to retire in lieu of elimination" by not forwarding his case to an AGDRB. [ECF 18] at 6. Mr. Brown states that the Army "advised that his action would be forwarded to the [AGDRB] . . . [to] determine[] the highest retirement rank in which an officer has served satisfactorily," *id.* at 16, and that "[h]ad [his] action been considered by the [AGDRB, it] could have recommended retirement in the rank of Major, or in the rank of Captain," *id.* Mr. Brown also argues that the Army "notified [him] about the [AGDRB] process but it never followed through[, which] was prejudicial to [him]

11

because he was within days of being eligible to retire after 20 years of service[.]" [ECF 22] at 24-25. In response, the government contends that "once the Secretary denied Mr. Brown's request to retire, there was no need for a referral to the [AGDRB] because there was no need to determine the highest grade for which he would be qualified to receive retirement pay." [ECF 29] at 8-9. According to the government, Mr. Brown "would not have been eligible for review by [the AGDRB] unless he was retirement eligible, which he was not, or unless the Secretary of the Army or his or her designee directed that he be retired in lieu of elimination." *Id.* at 9.

The Court finds that the Army did not err when it eliminated Mr. Brown without the AGDRB first considering his request for retirement in lieu of elimination. At any time during or prior to final action in an elimination case, "[a]n officer identified for elimination may . . . elect . . . [to s]ubmit a resignation in lieu of elimination[,] . . . [r]equest discharge in lieu of elimination[,] . . . [or a]pply for retirement in lieu of elimination if otherwise eligible." Army Reg. 600-8-24 ¶ 4-24a (2006). When the officer elects one of these options, the Army "may suspend elimination proceedings pending final action on the option elected." *Id.* ¶ 4-24b. Here, the Army notified Mr. Brown of the options set forth in Army Regulation 600-8-24 ¶ 4-24a. *See* AR 263 (August 9, 2017, CASCOM notice); *see also* AR 202 (May 16, 2017, initiation of elimination memorandum). Additionally, the Army informed Mr. Brown that, if he elected to apply for retirement in lieu of elimination, he may also "submit matters for the [AGDRB] because [his] retirement in lieu of elimination, Official Military Personnel File, Officer Record Brief, and the derogatory information, w[ould] be forwarded to the [AGDRB][.]" AR 263; *see* AR 202. Mr. Brown elected to apply for retirement in lieu of elimination on August 15, 2017. AR 264. Thereafter, notwithstanding Mr. Brown's election, the Army continued with his elimination proceedings and, on December 21, 2017, decided to eliminate him. AR 407. This decision was reached without referral of Mr. Brown's retirement in lieu of elimination application to the AGDRB. Nevertheless, the Army acted within its discretion when it did so because the Army was not required to suspend Mr. Brown's elimination proceedings pending final action on his retirement request, including consideration by the AGDRB. *See* Army Reg. 600-8-24 ¶ 4-24b (2006) ("When an option is elected, the [Army] *may* suspend elimination proceedings pending final action on the option elected by the officer." (emphasis added)); *McMullen v. United States*, 50 Fed. Cl. 718, 725 (2001) ("As a matter of statutory construction, the word 'may' usually connotes permissive discretion, as opposed to the word 'shall' which connotes a mandatory task." (citing *Andersen Consulting v. United States,* 959 F.2d 929, 932 (Fed. Cir. 1992))), *aff'd*, 71 F. App'x 848 (Fed. Cir. 2003).[7]

Furthermore, because the Army decided to eliminate Mr. Brown, referral of his retirement in lieu of elimination application to the AGDRB was unnecessary and would not have changed the outcome. "An officer is not automatically entitled to retire in the highest grade served on active duty." Army Reg. 15-80 ¶ 4-1a (2002). "Instead, an officer is retired in the highest grade served on active duty satisfactorily, as determined by the [Secretary of the Army]

---

[7] In contrast to the 2006 version of Army Regulation 600-8-24 ¶ 4-24b, which uses the word "may" to afford the Army discretion whether to suspend elimination proceedings when an officer makes an election, an earlier version of this regulation uses the word "will" to require that the Army suspend elimination proceedings when an officer makes an election. *See Loomis v. United States*, 68 Fed. Cl. 503, 509 (2005) (interpreting an earlier version of Army Regulation 600-8-24 ¶ 4-24b and finding that "[t]he use of the word 'will' indicates an absolute and leaves the Army no discretion to determine whether elimination proceedings should be suspended").

or [his or her] designee." *Id.* In this regard, the AGDRB "will recommend to the appropriate authority the highest grade satisfactorily served." *Id.* ¶ 1-11b. "The AGDRB recommendation is purely advisory, and the [Secretary of the Army] or [his or her] designee is not bound by that recommendation." *Id.* ¶ 4-1a. "Officer grade determinations are normally accomplished at time of retirement . . . and the officer's grade is fixed at that time." *Id.* ¶ 4.1c. Because the Army decided to eliminate Mr. Brown "prior to [him] reaching retirement eligibility," AR 409, the Army did not need the AGDRB to make a grade determination recommendation for Mr. Brown. As such, even if the Court were to find that the Army erred by not forwarding his retirement in lieu of elimination application to the AGDRB in accordance with its notifications to Mr. Brown, *see* AR 202, 263, this error would be harmless because the Army decided to eliminate Mr. Brown, and a grade determination recommendation by the AGDRB would not change this outcome. *See Exnicios*, 140 Fed. Cl. at 374 (finding a procedural error to be harmless because it did not "substantially affect the outcome of the matter" (quoting *Rogers*, 124 Fed. Cl. at 767)).

### D.    Requests to Retire in Lieu of Elimination

Lastly, Mr. Brown argues that the Army "arbitrarily and capriciously returned [his] retirement request without action" in September 2017, "interfered with [his] retirement request by improperly maintaining flags in [his] records," and improperly induced him to apply for retirement later. [ECF 18] at 16. According to Mr. Brown, the three flags in his record were closed by August 2, 2017, and, therefore, should not have "block[ed his] retirement in lieu of elimination request processing." [ECF 22] at 28. In response, the government asserts that Mr. Brown "complicated the process by submitting both a request for retirement in lieu of a separation and a separate request for voluntary retirement[.]" [ECF 21] at 28. According to the government, Mr. Brown's voluntary retirement request was returned without action because he "had an [ADSO] and three flags that prevented him from seeking a voluntary retirement through normal channels without a waiver[.]" *Id.* at 30. The government states that such flags "were issued and maintained in accordance with Army regulations," *id.* at 28, and that the flag for Mr. Brown's involuntary separation action "remained open until the separation action ended, which occurred when . . . [the Army] directed his elimination," [ECF 29] at 16-17. The government also states that "even setting aside the issue of the flags, because of Mr. Brown's ADSO, under either [the retirement in lieu of elimination process or the voluntary retirement process,] the Secretary of the Army was the final approval authority," [ECF 29] at 17, and "[t]here can be no error if the same authority . . . reviewed Mr. Brown's retirement request and denied it," [ECF 21] at 31.

The Army did not act arbitrarily or capriciously in its processing of Mr. Brown's retirement requests. Under Army Regulation 600-8-24 ¶ 6-13, "[t]he retirement application of [s]oldiers who are 'flagged' . . . [and t]he retirement application of officers who have an [ADSO] must be submitted to HQDA for approval[.]" Army Reg. 600-8-24 ¶ 6-13a(7) (2006); *see also* Army Reg. 600-8-2 ¶ 3-1(g) ("A properly imposed [f]lag prohibits . . . [the] retirement" of a servicemember though "commissioned . . . officers may submit a request for . . . retirement for consideration by HQDA . . . while flagged."). Here, the Army initiated three flags for Mr. Brown—a law enforcement investigation flag, *see* AR 743; *see also* Army Reg. 600-8-2 ¶ 2-2b (2016) ("'Law enforcement investigation' (Flag code M)"), an adverse action flag, *see* AR 742; *see also* Army Reg. 600-8-2 ¶ 2-2c ("'Adverse actions' (Flag code A)"), and an involuntary

13

separation flag, *see* AR 757; *see also* Army Reg. 600-8-2 ¶ 2-2d ("'Involuntary separation or discharge' (field initiated (Flag code B)"). The Army should have removed the law enforcement investigation flag on March 31, 2017,[8] and the adverse action flag on May 16, 2017.[9] Thus, when Mr. Brown submitted his retirement requests on August 5, 2017, and August 15, 2017, his record properly contained an involuntary separation flag, *see* Army Reg. 600-8-2 ¶ 2-2d (2016) (noting that an involuntary separation flag for an active duty servicemember is not removed until the servicemember "is reassigned to a transition point . . . or . . . retained").[10] In addition, it is undisputed that, at the time of these requests, Mr. Brown had an ADSO. *See* [ECF 22] at 16; [ECF 18] at 16-17. Therefore, because Mr. Brown had a properly imposed flag and an ADSO at the time of his retirement requests, the Army was required to submit his requests to HQDA for approval. *See* Army Reg. 600-8-24 ¶ 6-13a(7) (2006).

Despite the notification to Mr. Brown that his voluntary retirement request was "returned without action," AR 139, the record shows that this error was harmless because HRC forwarded his voluntary retirement request to HQDA in satisfaction of its requirements. On September 5, 2017, CASCOM forwarded Mr. Brown's August 5, 2017, voluntary retirement request and August 15, 2017, request to retire in lieu of elimination to HRC. AR 410 (memorandum from CASCOM to HRC enclosing retirement requests); *see also* AR 758-59 (August 15, 2017, election to apply for retirement in lieu of elimination); AR 766-70 (August 5, 2017, memorandum requesting voluntary retirement in lieu of elimination). Although the record lacks documentation explicitly showing that HRC forwarded Mr. Brown's retirement request to HQDA, the record supports the conclusion that Mr. Brown's request was forwarded because the DASA's memorandum to the ASA directly references the request. *See* AR 408 ("On 5 August 2017, MAJ Brown submitted a Retirement In Lieu of Elimination."). Thus, the record shows that Mr. Brown's retirement request was before HQDA when it determined that he should be

---

[8] Army Regulation 600-8-2 directs the removal of a law enforcement investigation flag, not involving civilian law enforcement, when "[t]he completed [Department of the Army ("DA")] Form 4833 [Commander's Report of Disciplinary or Administrative Action] is submitted to the provost marshal or [the U.S. Army Criminal Investigation Command][.]" Army Reg. 600-8-2 ¶ 2-9b(10)(a) (2016). The regulation also indicates that the Army should prepare DA Form 268 "to remove a [f]lag when the Soldier's status changes from unfavorable to favorable." *See id.* ¶ 2-1f(5). Here, the Army used DA Form 268 to remove the "law enforcement investigation" flag, "effective [03/31/2017]." AR 743 (capitalization omitted).

[9] Army Regulation 600-8-2 directs the removal of an adverse action flag when a GOMOR is directed to be filed. *See* Army Reg. 600-8-2 ¶ 2-9b(4) (2016). Here, the Army directed that Mr. Brown's GOMOR be placed in his Army Military Human Resource Record on May 16, 2017. AR 198.

[10] Mr. Brown argues that the involuntary separation flag "was closed on August 2, 2017." [ECF 22] at 28 (citing AR 757). However, the document cited by Mr. Brown indicates that a flag was *initiated* for involuntary separation on August 2, 2017, and made retroactively effective on May 31, 2017. AR 757. It does not indicate that the flag was closed. *See id.*

"eliminated prior to reaching retirement eligibility." AR 408; *see also* AR 407 (DASA elimination decision).[11] [12]

## IV.    CONCLUSION

In sum, Mr. Brown failed to demonstrate that the ABCMR's decision to deny him relief was arbitrary, capricious, an abuse of discretion, or contrary to law. Accordingly, the Court **DENIES** Mr. Brown's motion for judgment on the administrative record, [ECF 18], and **GRANTS** the government's cross motion for judgment on the administrative record, [ECF 21]. The Clerk is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

s/ Thompson M. Dietz
THOMPSON M. DIETZ, Judge

---

[11] Mr. Brown contends that the Army "improperly induced [him] into believing that he could submit his retirement in lieu of elimination request later." [ECF 22] at 13. He relies on the September 21, 2017, email from HRC, [ECF 22] at 28, which notified him that his request for voluntary retirement was "returned without action," that he "ha[d] 3 adverse action flags[]. . . [and] an [ADSO] through 1 December 2018," and that "if flag[s] bec[ame] cleared, [he could] submit for voluntary retirement consideration." AR 139. While this email improperly suggests that Mr. Brown's voluntary retirement request would not be processed until after his flags were cleared, *see* Army Reg. 600-8-2 ¶ 3-1(g)(1) (permitting commissioned officers to submit retirement requests while flagged), such error was harmless because Mr. Brown's voluntary retirement request was ultimately considered by HQDA, as required by Army Regulation 600-8-24 ¶ 6-13a(7), *see* 408-10; *see also Exnicios*, 140 Fed. Cl. at 374.

[12] Mr. Brown also contends that the Army "improperly titled [him] during an investigation for abusive sexual contact." [ECF 18] at 8. He further alleges that "the ABCMR failed to adequately address [his] arguments concerning the improper [] investigation by [the CID] for sexually abusive contact where the evidence showed that Uniform Code of Military Justice Article 120 was not violated because [he] made inappropriate comments and touched the complaining witness's hair and removed her hair clip[.]" *Id.* at 18. The Court is not persuaded. Under Department of Defense Instruction ("DoDI") 5505.07, an official will direct the correction of a titling block in a law enforcement investigation where "[p]robable cause did not or does not exist to believe that the covered person committed the offense for which they were titled and indexed, or insufficient evidence existed or exists to determine whether they committed such offense." DoDI 5505.07 § 3.2a(2) (2023); *see also* DoDI 5505.07 § 4b (2012) ("Once the subject of a criminal investigation is indexed, the name shall remain . . . even if the subject is found innocent of the offense under investigation, subject to the following exceptions: . . . in the case of mistaken identity . . . [or i]t is later determined that a mistake was made at the time of titling and indexing, and no credible information indicating that the subject committed a crime existed."). Here, the CID concluded that "probable cause existed to believe MAJ Brown committed the offense of Abusive Sexual Contact." AR 122. Additionally, after considering all the record evidence, the ABCMR "ultimately determined that sufficient evidence existed then, and existed now, to lead a reasonable person to conclude that [Mr. Brown] committed the offense of Abusive Sexual Contact." AR 32-33.